**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| TRAVIS FRANKLIN,<br><br>   Plaintiff,<br><br>  v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>   Defendant. | Case No.  5:25-cv-03657-BLF<br><br>**ORDER DENYING MOTION TO REMAND CASE TO STATE COURT**<br><br>[Re: Dkt. No. 15] |

Before the Court is Plaintiff Travis Franklin's ("Plaintiff" or "Franklin") Motion to Remand Case to State Court. Dkt. No. 15 ("Mot."). Defendant Home Depot U.S.A, Inc. ("Defendant" or "Home Depot") opposes the motion, Dkt. No. 21 ("Opp."), and Plaintiff filed a reply brief in support of his motion, Dkt. No. 22 ("Reply"). The Court previously found that this motion is suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b), and vacated the hearing set for July 17, 2025. Dkt. No. 23.

For the following reasons, the Court DENIES Plaintiff's motion.

**I. BACKGROUND**

On March 21, 2025, Plaintiff Travis Franklin filed this putative class action for violations of California wage and hour laws against Defendant Home Depot U.S.A., Inc. in the Superior Court of the State of California in and for the County of Monterey. Dkt. No. 1-1, Exhibit A to Notice of Removal ("Compl."). Franklin was employed by Home Depot in California from June 2021 until July 2024. *Id.* ¶ 3. During that time, he was classified as a non-exempt employee. *Id.* He brings this action on behalf of himself "and a California class, defined as all individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees (the 'CALIFORNIA

CLASS') at any time during the period beginning four (4) years prior to the filing of this Complaint." *Id.* ¶ 4. Franklin alleges that, "[a]mong other things, [Home Depot] require[d] [Franklin] to work while clocked out" during meal breaks, "round[ed] the actual time worked and recorded . . . to the benefit of [Home Depot]," and required employees to "perform work off the clock." *Id.* ¶ 8.

The Complaint includes nine causes of action: (1) unlawful business practices in violation of California Business & Professions Code § 17200 *et seq.*, Compl. ¶¶ 44–58; (2) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1, Compl. ¶¶ 59–71; (3) failure to pay overtime compensation in violation of California Labor Code § 510, Compl. ¶¶ 72–85; (4) failure to provide required meal periods in violation of California Labor Code §§ 226.7 and 512, Compl. ¶¶ 86–89; (5) failure to provide required rest periods in violation of California Labor Code §§ 226.7 and 512, Compl. ¶¶ 90–93; (6) failure to provide accurate itemized statements in violation of California Labor Code § 226, Compl. ¶¶ 94–97; (7) failure to reimburse employees for required expenses in violation of California Labor Code § 2802, Compl. ¶¶ 98–101; (8) failure to pay wages when due in violation of California Labor Code §§ 201, 202, and 203, Compl. ¶¶ 102–109; and (9) failure to pay sick pay wages in violation of California Labor Code §§ 201–203, 233, and 246, Compl. ¶¶ 110–115.

Home Depot was served on March 26, 2025, Dkt. No. 1 ("NOR") ¶ 2, and timely removed the action to the United States District Court for the Northern District of California on April 25, 2025. Removal jurisdiction was based on the Class Action Fairness Act of 2005 ("CAFA"). *Id.* ¶ 6. On May 22, 2025, Franklin moved to remand the action to the state court, challenging Home Depot's ability to show by a preponderance of the evidence that the amount in controversy exceeds the minimum required to invoke CAFA jurisdiction. *See* Mot. at 1.

**II.  LEGAL STANDARD**

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Pursuant to the Class Action Fairness Act, federal courts have

1   original jurisdiction over civil class actions where the amount in controversy exceeds the sum or
2   value of $5,000,000 (exclusive of interest and costs), the number of members of all proposed
3   plaintiff classes in the aggregate is more than 100, and any member of a class of plaintiffs is a
4   citizen of a State different from any defendant.  28 U.S.C. § 1332(d).  While generally "[t]he
5   removal statute is strictly construed, and any doubt about the right of removal requires resolution
6   in favor of remand," *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)
7   (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)), "no antiremoval presumption
8   attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class
9   actions in federal court," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)
10  (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)); *see also Jordan v.*
11  *Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

12        In seeking removal under CAFA, the defendant bears the burden of establishing federal
13  jurisdiction.  *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  To
14  satisfy this burden, the defendant need include "only a plausible allegation that the amount in
15  controversy exceeds the jurisdictional threshold" in its notice of removal.  *Dart Cherokee*, 574
16  U.S. at 89.  "Thereafter, the plaintiff can contest the amount in controversy by making either a
17  'facial' or 'factual' attack on the defendant's jurisdictional allegations."  *Harris v. KM Indus.,*
18  *Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964
19  (9th Cir. 2020)).  "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts
20  that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Salter*, 974 F.3d at 964
21  (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  A factual attack "contests the
22  truth of the . . . allegations" by the defendant.  *Id.*  Where the plaintiff has mounted a factual attack
23  on jurisdiction, the defendant must show, by a preponderance of the evidence, that the amount-in-
24  controversy requirement is met.  *Harris*, 980 F.3d at 699.  "The parties may submit evidence
25  outside the complaint, including affidavits or declarations, or other 'summary-judgment-type
26  evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197
27  (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

28        "Under this system, a defendant cannot establish removal jurisdiction by mere speculation

3

and conjecture, with unreasonable assumptions." *Id.* However, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199). The defendant "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Harris*, 980 F.3d at 701 (citing *Dart Cherokee*, 574 U.S. at 88–89).

### III. DISCUSSION

Franklin does not challenge two of the jurisdictional requirements under CAFA: that the number of members of all proposed plaintiff classes in the aggregate is more than 100, and that any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d). Therefore, the Court focuses its analysis on whether the $5,000,000 minimum for the amount in controversy is met.

Franklin's Complaint asserts that the amount in controversy in this case is "under five million dollars." Compl. ¶ 4. Home Depot's Notice of Removal, however, asserts that the amount in controversy is *at least* $6,890,625 based on its estimates of the potential value of the waiting time claim and the attorneys' fees alone. NOR ¶ 26. In the motion to remand, Franklin accuses Home Depot of basing this estimated amount in controversy on "unreliable declaration testimony, unreasonable assumptions[,] and missing information and data points." Mot. at 2. Franklin then challenges various assumptions underlying Home Depot's amount-in-controversy calculations for the waiting time penalty claim and the potential attorneys' fees. *Id.* at 3–9. Because Franklin's motion to remand expressly challenges Home Depot's ability to show that the amount-in-controversy requirement is met, Home Depot is required to come forward with concrete proof sufficient to establish the amount in controversy by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 89.

To address this challenge, Home Depot submits a declaration in support of its opposition to Plaintiff's motion to remand from G. Edward Anderson, a Vice President and Senior Economist at Charles River Associates. Dkt. No. 21-1, Second Declaration of G. Edward Anderson, Ph.D., in Support of Defendant Home Depot U.S.A., Inc.'s Opposition to Plaintiff's Motion to Remand

4

("2d Anderson Decl."). Mr. Anderson attests that he "received and reviewed Home Depot's time records, HR information that includes final pay rates, and employee termination data." *Id.* ¶ 5. He further attests that he determined the following calculations related to this putative class action:

- More than 1,400 employees holding a "Merchandising Execution Team" ("MET") position had a termination date between March 21, 2022 and January 31, 2025. *Id.* ¶ 8.
- For the 1,400 MET employees who terminated between March 21, 2022 and January 31, 2025, "the average duration between the first clock in of the day and the first meal of the day, and the clock in from a return from lunch to the clock out for the day, was more than seven hours." *Id.* ¶ 9.
- For the 1,400 MET employees who terminated between March 21, 2022 and January 31, 2025, the average hourly rate of the terminated employees at the time of termination was more than $18.75 per hour. *Id.* ¶ 10.
- Between March 21, 2022 and January 31, 2025, Home Depot "employed about 103,000 non-exempt, hourly employees in California." *Id.* ¶ 11.
- More than 55,000 non-exempt, hourly employees terminated their employment with Home Depot between March 21, 2022 and January 31, 2025. *Id.* ¶ 12.
- The 55,000 non-exempt, hourly employees who terminated during that period worked an average of more than 6.5 hours per shift and had an hourly rate of more than $18.00. *Id.* ¶ 12–13.

On reply, Plaintiff does not submit his own evidence, instead focusing on critiquing the reasonableness of Defendant's assumptions. *See generally* Reply.

The Court concludes that Home Depot has met its burden to establish that the CAFA amount-in-controversy requirement is met. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's liability." *Arias*, 936 F.3d at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). As such, the Ninth Circuit has recently held that "a removing defendant need not present evidence of what its ultimate liability will be" since "in many cases, the defendant presumably expects that

5

1   figure to be zero." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citing *Lewis*, 627

2   F.3d at 400); *accord Harris*, 980 F.3d at 701 (noting that a defendant is not required to "make the

3   plaintiff's case for [him] or prove the amount in controversy beyond a legal certainty" (citing *Dart*

4   *Cherokee*, 574 U.S. at 88–89)).  The defendant is instead "permitted to rely on 'a chain of

5   reasoning that includes assumptions,'" which may be "'founded on the allegations of the

6   complaint' and do not necessarily need to be supported by evidence." *Perez*, 131 F.4th at 808

7   (quoting *Arias*, 936 F.3d at 925).  This is particularly true with regard to assumed violation rates,

8   since the violations are merely *alleged* and the defendant presumably believes that evidence of the

9   violation rate "does not exist." *Id.*

10        In this case, the Parties have focused on a single claim in estimating the potential amount

11   in controversy: Plaintiff's Eighth Cause of Action for failure to pay wages when due in violation

12   of California Labor Code §§ 201, 202, and 203.  Under those statutory provisions, "[i]f an

13   employer discharges an employee, the wages earned and unpaid at the time of discharge are due

14   and payable immediately." Cal. Lab. Code § 201(a); *see also id.* § 202 (stating the rule regarding

15   payment of wages upon employee's resignation).  "If an employer willfully fails to pay, without

16   abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages

17   of the employee shall continue as a penalty from the due date thereof at the same rate until paid or

18   until an action therefor is commenced; but the wages shall not continue for more than 30 days."

19   Cal. Lab. Code § 203(a).  "An employer 'need only have caused and failed to remedy a single

20   violation per employee for waiting time penalties to apply,'" and the relevant rate of pay is

21   "calculated as a daily figure, which can then be multiplied by the number of days of nonpayment

22   for a maximum of 30 days." *Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094, 1101 (S.D. Cal. 2024)

23   (quoting *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-0839, 2019 WL 7987117,

24   at *6 (C.D. Cal. June 21, 2019), and *Mamika v. Barca*, 68 Cal. App. 4th 487, 494 (1998)).

25        Here, Franklin's Complaint expressly seeks to bring suit on behalf of "a California class,

26   defined as all individuals who are or previously were employed by [Home Depot] in California . . .

27   and classified as non-exempt employees . . . at any time during the period beginning four (4) years

28   prior to the filing of this Complaint." Compl. ¶ 4.  Franklin brings the Second, Third, Fourth,

1  Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action on behalf of a putative "California
2  Labor Sub-Class" defined as "all members of the CALIFORNIA CLASS who are or previously
3  were employed by DEFENDANT in California, including any employees staffed with
4  DEFENDANT by a third party, and classified as non exempt employees . . . at any time during the
5  period three (3) years prior to the filing of the complaint." *Id.* ¶ 35.  Under his Eighth Cause of
6  Action, Franklin goes on to demand "thirty days of pay as penalty for not paying all wages due at
7  time of termination for all employees who terminated employment during the CALIFORNIA
8  LABOR SUB-CLASS PERIOD." *Id.* ¶ 109.  In other words, Franklin expressly alleges a 100
9  percent violation rate for waiting time penalties for all members of the California Labor Sub-Class
10 who terminated employment during the three years prior to the date of filing this lawsuit.  This
11 allegation is bolstered by the accompanying allegation that Home Depot had a "*uniform* practice
12 and policy of failing to pay the LABOR SUB-CLASS Members for all vested vacation and
13 holiday time accumulated at employment termination." *Id.* ¶ 108 (emphasis added).

14 In response, Home Depot has submitted competent evidence that the California Labor Sub-
15 Class exceeds 103,000 class members, and that more than 55,000 hourly, non-exempt California
16 employees within that sub-class terminated their employment during the three-year period prior to
17 the filing of the Complaint in this action.  2d Anderson Decl. ¶¶ 11–12.  Those 55,000 individuals
18 worked an average of 6.5 hours per shift and were paid an average of $18.00 per hour.  *Id.* ¶¶ 12–
19 13.  The minimum wage throughout the class period was $15.00 per hour.  Cal. Lab. Code
20 § 1182.12(b)(1)(F) ("For any employer who employs 26 or more employees, the minimum wage
21 shall be as follows: . . . (F) From January 1, 2022, and until adjusted by subdivision (c) – fifteen
22 dollars ($15) per hour.").  Therefore, even after reducing each of the calculations for (1) number of
23 terminated members of the California Labor Sub-Class, (2) average length of shift, and (3) average
24 hourly pay rate, Home Depot estimates that the amount in controversy on Franklin's claim for
25 thirty days of waiting time penalties *alone* exceeds $90,000,000, as follows:

26     50,000 terminated California sub-class members * 4 hours of working time/day * $15.00
27 per hour of pay * 30 days = $90,000,000.

28 In light of Plaintiff's own allegations in the Complaint, the Court concludes that Home

7

1   Depot's assumed violation rate is reasonable.  *See Amezcua v. CRST Expedited Inc.*, 653 F. Supp.
2   3d 712, 722 & n.8 (N.D. Cal. 2023) (finding a 100 percent violation rate reasonable for purposes
3   of waiting time penalties where the plaintiff had alleged "regular violations of the labor code" and
4   that "all separated workers [were] in the waiting time penalty class"); *La Grow v. JetBlue Airways*
5   *Corp.*, No. 24-cv-00518, 2024 WL 3291589, at *5 (C.D. Cal. July 3, 2024) ("Courts in the Ninth
6   Circuit have found both a 100% assumed violation rate and using the maximum 30-day recovery
7   period for waiting time penalties to be reasonable."); *Trigueros v. Stanford Fed. Credit Union*, No.
8   21-cv-01079, 2021 WL 2649241, at *5– 6 (N.D. Cal. June 28, 2021) (accepting a 100 percent
9   violation rate where the plaintiff "tied her waiting period claims to her other claims," and the
10  defendant included "only terminated employees in its use of a 100% violation rate").  Moreover,
11  Home Depot has supported its calculations regarding average shift length, number of relevant
12  terminated employees, and pay rate with competent evidence.  *See* 2d Anderson Decl. ¶¶ 11–13.
13  Critically, while any class that may ultimately be certified in this case might be narrower than "all
14  individuals who are or previously were employed by [Home Depot] in California . . . and
15  classified as non-exempt employees" during the relevant period, Compl. ¶ 4, neither Plaintiff's
16  Motion nor his Reply disavows the breadth of the California Class or California Labor Sub-Class
17  as currently defined.  Therefore, the Court has no trouble concluding that the amount *potentially* in
18  controversy well exceeds the minimum required to invoke CAFA jurisdiction.

19          Plaintiff's arguments to the contrary rest on the incorrect proposition that Home Depot
20  must submit *proof* of the alleged violation rates.  *See* Reply at 2 ("[T]he Anderson Decl. fails to
21  provide any information whatsoever to support Defendant's erroneous violation rate assumptions.
22  . . .  Indeed, the Anderson Decl. fails to address violation rates.").  All of Plaintiff's cited cases
23  suggesting that Home Depot is required to submit such evidence pre-date the Ninth Circuit's
24  recent decision in *Perez*, which expressly noted that "because the defendant likely believes that the
25  real rate is zero . . . a CAFA defendant can most readily ascertain the violation rate by looking at
26  the plaintiff's complaint."  *Perez*, 131 F.4th at 808.  *See* Mot. at 3–8; Reply at 2–6 (citing orders
27  issued, at latest, in 2024).

28          For example, in both his Motion and his Reply, Franklin relies on *Blossom v. Waldorf*

8

*Astoria Employer, LLC*, No. 23-cv-10510, 2024 WL 709212 (C.D. Cal. Feb. 21, 2024). That order was issued in early 2024, over a year prior to the Ninth Circuit's opinion in *Perez*. Likewise, *Greene v. Dollar Tree Distribution, Inc.*, No. 24-cv-1701, 2024 WL 5317313 (C.D. Cal. Oct. 21, 2024), was decided in October 2024. Its rationale that the defendant's assumptions were unreasonable "in the absence of competent evidence to support" the estimated twenty percent violation rate—such as evidence distilled from "reviewing personnel files, time records, and payroll history"—is irrelevant following *Perez*. *See* 2024 WL 5317313 at *8. And even if that order had been decided based on the language in the complaint, the citation would be off-point: there, the plaintiff expressly stated that the defendants "*at times*, willfully failed and refused to timely pay Plaintiffs and the Class, *or some of them*, all final wages due at their termination." *Id.* at *7 (emphasis in original). Here, in contrast, Franklin has expressly demanded "*thirty days of pay as penalty* for not paying all wages due at time of termination *for all employees who terminated employment* during" the relevant class period. Compl. ¶ 109 (emphasis added). Plaintiff's arguments regarding the reasonableness of Defendant's assumed violation rates are rejected as both (1) reflective of an outdated standard, and (2) directly contradicted by the express allegations in the Complaint.

As a final note, the Court also rejects Plaintiff's argument that Defendant has "conflate[d]" the burden of proof on removal with that on a motion to remand in a CAFA case. *See* Reply at 7–8. Home Depot correctly identified that its only obligation at the point of removal was to include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. Plaintiff cites *Dart Cherokee* for the proposition that "Plaintiff's assertion that this case involves an amount in controversy of less than $5 million is presumed to be correct." Reply at 7 (citing *Dart Cherokee*, 574 U.S. at 84). But what *Dart Cherokee* actually says is: "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee*, 574 U.S. at 84 (citing 28 U.S.C. § 1446(c)(2)). Here, Plaintiff's Complaint *does not* demand monetary relief of a stated sum. Instead, it merely *alleges* that "[t]he amount in controversy for the aggregate claim of CALIFORNIA CLASS Members is under five million dollars," Compl.

9

¶¶ 4, 25, and it makes the same allegation as to the California Labor Sub-Class Members, *id.* ¶ 35. There is no demand for a stated sum in Plaintiff's Prayer for Relief, so there is no specific number that may be "deemed to be the amount in controversy." Instead, Home Depot was entitled to assert a calculated amount in controversy for purposes of CAFA removal in the Notice of Removal—which is precisely what it did. *See* NOR ¶ 26.

Only after Franklin attacked this estimated amount in controversy in the motion to remand did it become incumbent upon Home Depot to prove the amount in controversy by a preponderance of the evidence. *Harris*, 980 F.3d at 699. "In light of [*Standard Fire Insurance Company v. Knowles*, 568 U.S. 588 (2013)], this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Ibarra*, 775 F.3d at 1197 (citing *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013)). And in proving the amount in controversy, Home Depot was "permitted to rely on 'a chain of reasoning that includes assumptions,'" which may be "'founded on the allegations of the complaint.'" *Perez*, 131 F.4th at 808 (quoting *Arias*, 936 F.3d at 925). The Court finds that Home Depot met its burden to present competent evidence that the jurisdictional minimum is met in this case. Since Plaintiff declined to come forward with his own competing evidence, *see* Reply at 7–8, there is no factual dispute before the Court regarding the amount in controversy. By a preponderance of the evidence, then, Home Depot has established that the Court has jurisdiction over this dispute under CAFA.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand Case to State Court (Dkt. No. 15) is DENIED.

**IT IS SO ORDERED.**

Dated: July 17, 2025

_____
BETH LABSON FREEMAN
United States District Judge

10